UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**06 2044**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SIMMIE HICKS, RICHARD HINDS,
TIMOTHY JONES, VICTORIA PLUMMER,
RAJAH RHODES, EARLENE SUTTON,
MELANIE ELEY, MARILYN MAGWOOD,
EARLINE WILSON, and TONYA PATTERSON,

**SIFTON, J.**

Plaintiffs,

-against-

**COMPLAINT**

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT COMMISSIONER
RAYMOND W. KELLY, ASSISTANT CHIEF
OF POLICE JOSEPH CUNNEEN, INSPECTOR
JAMES O'CONNELL, SERGEANT DWIGHT
SMITH, POLICE OFFICER JARRETT LEMIUEX,
POLICE OFFICER WALIUR RAHMAN, POLICE
OFFICER THOMAS WOODS, POLICE OFFICER
JOSEPH MANZI, and POLICE OFFICER DARNAY
HARRIS,

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   MAY 0 2 2006   ★

**BROOKLYN OFFICE**

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Plaintiffs, Simmie Hicks, Richard Hinds, Timothy Jones, Victoria Plummer,

Rajah Rhodes, Earlene Sutton, Melanie Eley, Marilyn Magwood, Earline Wilson, and Tonya

Patterson (herein referred to collectively as "Plaintiffs"), by their attorneys, Reibman & Weiner,

as for their complaint against the defendants, allege, upon information and belief, as follows:

## INTRODUCTION

1.       This action arises from the unlawful and improper conduct of the

defendant officers, who, on May 12, 2005, without a warrant, invitation or exigent

circumstances, entered a private building where the plaintiffs were lawfully gathered and, without probable cause, proceeded to seize and strip search each plaintiff in direct violation of the United States Constitution and the City of New York's own rules and regulations concerning strip searches. Plaintiffs were then transported to a local precinct where they were inexplicably subjected to a second strip search, before being taken to Central Booking, where they were held but not arraigned. During the course of plaintiffs' incarceration, which lasted nearly two full days, defendant Lemieux swore out a search warrant for the location where the arrests had taken place, presumably hoping to find evidence to justify and cover up defendants' unlawful conduct. The plaintiffs were finally released when the search incident to the warrant failed to uncover any evidence of illegal conduct. None of the plaintiffs were criminally charged, except for one – and that ended in a court-ordered dismissal of the action in his favor.

       2.     The plaintiffs also seek redress from the municipal and supervisory defendants who knowingly approved and promoted the unlawful policies from which this misconduct arose, including the department-wide policy of employing strip searches in a routine manner without sufficient cause or justification, as well as the imposition of "bullpen therapy" for persons arrested without cause (the acknowledged practice of keeping innocent people in cells for prolonged periods of time when it is anticipated that the arrestees will not be arraigned). The municipal and supervisory defendants' deliberate and intentional creation and adoption of unlawful police policies, practices and customs has created and fostered a policy of lawlessness, and disregard for the fundamental constitutional and civil rights of the citizens of this City, as is evidenced by the events complained of herein by the plaintiffs.

2

## PARTIES, JURISDICTION and VENUE

3.    At all relevant times herein, plaintiff Simmie Hicks was a fifty-four year-old black male resident of the County of Kings, within the City and State of New York.

4.    At all relevant times herein, plaintiff Richard Hinds was a fifty-three year-old black male resident of the County of Kings, within the City and State of New York.

5.    At all relevant times herein, plaintiff Timothy Jones was a forty-five year-old black male resident of the County of Kings, within the City and State of New York.

6.    At all relevant times herein, plaintiff Victoria Plummer was a forty-three year-old black female resident of the County of Kings, within the City and State of New York.

7.    At all relevant times herein, plaintiff Rajah Rhodes was a forty-three year-old black male resident of the County of Kings, within the City and State of New York.

8.    At all relevant times herein, plaintiff Earlene Sutton was a forty-six year-old black female resident of the County of Kings, within the City and State of New York.

9.    At all relevant times herein, plaintiff Melanie Eley was a forty-one year-old black female resident of the County of Kings, within the City and State of New York.

10.    At all relevant times herein, plaintiff Marilyn Magwood was a forty-two year-old black female resident of the County of Kings, within the City and State of New York.

11.    At all relevant times herein, plaintiff Earline Wilson was a sixty-two year-old black female resident of the County of Kings, within the City and State of New York.

12.    At all relevant times herein, plaintiff Tonya Patterson was a thirty-nine year-old black female resident of the County of Kings, within the City and State of New York.

3

13.     At all relevant times herein, defendant City of New York was and is a
municipal corporation duly organized and existing under and by virtue of the laws of the State of
New York and acts by and through its agencies, employees and agents, including, but not limited
to, the New York City Police Department ("NYPD") and its employees.

14.     Upon information and belief, defendant Raymond W. Kelly was at all
relevant times herein employed by the City of New York as the Commissioner of the NYPD.
Kelly is being sued herein in both his official and individual capacities.

15.     Upon information and belief, defendant Assistant Chief Joseph Cunneen
was at all relevant times herein employed by the City of New York as the Commanding Officer
of the Patrol Services Bureau for the Brooklyn North Division of the NYPD.  Cunneen is being
sued in both his official and individual capacities.

16.     Upon Information and belief, defendant Inspector James O'Connell was at
all relevant times herein employed by the City of New York as the Commanding Officer of the
77th Precinct of the NYPD.  O'Connell is being sued in both his official and individual capacities.

17.     Upon information and belief, defendant Sergeant Dwight Smith was at all
relevant times herein employed by the City of New York as a supervisory officer assigned to the
77th Precinct of the NYPD.  Smith is being sued in both his official and individual capacities.

18.     Upon information and belief, defendant Jarrett Lemieux, whose tax reg.
number is believed to be 928631, was at all relevant times herein employed by the City of New
York as a police officer assigned to the 77th Precinct of the NYPD.  Lemieux is being sued in
both his official and individual capacities.

4

19.     Upon information and belief, defendant Waliur Rahman was at all relevant times herein employed by the City of New York as a police officer assigned to the 77th Precinct of the NYPD. Rahman is being sued in both his official and individual capacities.

20.     Upon information and belief, defendant Thomas Woods was at all relevant times herein employed by the City of New York as a police officer assigned to the 77th Precinct of the NYPD. Woods is being sued in both his official and individual capacities.

21.     Upon information and belief, defendant Joseph Manzi was at all relevant times herein employed by the City of New York as a police officer assigned to the 77th Precinct of the NYPD. Manzi is being sued in both his official and individual capacities.

22.     Upon information and belief, defendant Darnay Harris was at all relevant times herein employed by the City of New York as a police officer assigned to the 77th Precinct of the NYPD. Harris is being sued in both his official and individual capacities.

23.     Upon information and belief, at all relevant times herein each of the individual defendants were state actors acting in the course of their employment with the NYPD under color of law.

24.     Original jurisdiction of this Court is founded upon 28 U.S.C. §§ 1331, *et seq.*, and 42 U.S.C. §§ 1981 and 1983. The Court has jurisdiction over the state claims under the legal principles of supplemental jurisdiction.

25.     Venue is properly laid in this District pursuant to 28 U.S.C. §1391, *et seq.*, because all of the events complained of herein occurred within the Eastern District of New York, and because it is the district of residence for the plaintiffs.

5

26.    A Notice of Claim was timely served by each of the plaintiffs upon the defendant City of New York.

27.    At least thirty days have passed since plaintiffs' service of their Notices of Claim, and adjustment and payment thereof has been neglected or refused by the City of New York.

28.    Plaintiffs have complied with all of obligations, requirements and conditions precedent to commencing an action against New York City under New York law.

## FACTUAL ALLEGATIONS

### *The NYPD Strip Search Policy*

29.    On or prior to January 1, 2000, the NYPD issued a written policy concerning the use of various types of searches, including but not limited to strip searches, which involve both partial and complete disrobing, during and/or after an arrest. This policy was codified as Patrol Guide Procedure No.: 208-05 ("PG 208-05").

30.    PG 208-05 stated, *inter alia*, that all strip searches required approval from a desk officer or supervisor from the precinct of arrest or borough Court Section, and must be based on reasonable suspicion that weapons, contraband or evidence may be concealed in such a way that would not be discovered by either a frisk or field search, or a more thorough search at a police facility.

31.    On May 12, 2004, the Civilian Complaint Review Board ("CCRB") submitted a written recommendation to defendant Kelly relating to strip searches. More precisely, the CCRB stated that in the majority of the cases it had investigated, officers and

6

supervisors told CCRB investigators that they or their commands routinely conducted strip searches in violation of the procedures set forth in the Patrol Guide. Thus, the CCRB recommended to Kelly that the NYPD institute enhanced training of officers and supervisory personnel concerning the use of strip searches.

32.    The CCRB definition of "strip search" specifically included searches that required persons being searched to strip to their underwear, as well as searches requiring complete disrobing, including the removal of underwear.

33.    Although the municipal defendant, and defendant Kelly and other senior and supervisory members of the NYPD, had ample notice and knowledge that members of the NYPD were routinely executing improper and unlawful strip searches throughout the City of New York on a regular basis in violation of the state and federal constitutions, as well as the express rules and regulations articulated in the Patrol Guide, neither the NYPD, Kelly, nor any other employee or agency of the City of New York, took any steps to curb said abuses or otherwise correct the chronic, systemic and institutional misuse and abuse of strip searches by NYPD members.

34.    Upon information and belief, the defendants, including Kelly and the City of New York, deliberately and intentionally created, engaged in, or otherwise adopted and permitted to continue a pattern and practice of using strip searches in an improper and unlawful manner, in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond May 12, 2005.

35.    Additionally, the defendants City of New York, Kelly, Cunneen, and O'Connell, by their persistent lax supervision of their officers, by their practice of requiring their

7

officers to effect a certain minimum number of arrests, and persistent and arbitrary refusal to discipline their officers and to fully and adequately investigate allegations of abuse, neglect, cruelty, and violation of departmental rules and regulations have demonstrated a pattern and practice of abuse of power and deprivation of civil rights by subjecting persons to unlawful and unjustified detentions and deprivations of legal rights and remedies.

36.     Such actions are believed to be comprised of, *inter alia,* the persistent harassment of individuals, false arrest of said persons, insensitivity, intolerance, physical punishment and abuse and excessive force, failure to investigate claims of abuse and violations of departmental rules and regulations, failure to discipline officers when necessary, covering up such incidents when possible, and generally creating and fostering an environment in which an attitude of "cover-up" and denial and rationalization of officer misbehavior, tortious acts, and violations of law are condoned and accepted, all of which is common knowledge to the subject community and residents within the New York City area and exemplified by the facts alleged herein.

## *The Seizure and Strip Search of Plaintiffs at the Scene of Arrest on May 12, 2005*

37.     On May 12, 2005, during the early evening hours, the plaintiffs were lawfully assembled at 557 Nostrand Avenue, located in Kings County within the City and State of New York (the "Premises").

8

38.    The Premises is a privately owned three-story building that consists of a commercial or retail storefront on the ground floor, with private apartments on the second and third floors. On May 12, 2005, the storefront was closed to the general public.

39.    Although no part of the Premises were open to the public, the plaintiffs were present at the Premises as tenants or invited guests. At all relevant times herein, the plaintiffs were present in the basement of the Premises, which is always closed to the public.

40.    At approximately 7:00 p.m. on May 12, 2005, defendant Police Officers Lemieux, Rahman, Woods, Manzi and Harris, and defendant Sergeant Smith, without seeking or receiving permission or invitation to enter the Premises from the landlord, tenants, or any other party with the authority to grant defendants legal access to the Premises, physically forced their way into the Premises.

41.    The defendants did not possess a lawful warrant permitting them to enter and/or search the Premises at the time of their entry on May 12, 2005, nor were there exigent circumstances that would provide a lawful basis for the defendants' presence in the Premises, and the defendants did not have any right to be within the Premises.

42.    Even if the defendants had a legal right to enter the hallway and common area in the residential portion of the Premises (which they, in fact, and in law did not), they had no legal right to be present in the storefront or in the basement of the Premises.

43.    The defendants, while inside the Premises, seized each of the plaintiffs so that they were not free to leave, and then placed them under arrest. The defendants handcuffed and searched each plaintiff at the Premises.

9

44.    At no time did the defendants have adequate legal cause to detain, seize or arrest plaintiffs, nor could defendants have reasonably believed that such cause existed.

45.    After the plaintiffs had been seized, while still at the Premises, each plaintiff was subjected to a strip search by the defendants. In each case, the plaintiff was required to disrobe, remove or lower his or her underwear, and expose themselves for inspection.

46.    At no time at the Premises did the defendants have a reasonable suspicion that any of the plaintiffs were concealing weapons, contraband or evidence upon their persons or in their clothing in such a manner that would not be discovered by other, less intrusive search methods available, nor could defendants have reasonably believed that they were authorized to conduct a strip search of any of the plaintiffs.

47.    No weapons or contraband were discovered or recovered from the plaintiffs as a result of these searches.

### The Plaintiffs Are Strip Searched a
### Second Time at the Station House

48.    The plaintiffs were detained at the Premises for a period of hours and then transported to the 77th Precinct station house for processing. While at the 77th Precinct, the plaintiffs were fingerprinted and photographed.

49.    While still at the 77th Precinct, notwithstanding the fact that each plaintiff had been strip searched at the Premises, and had remained under arrest and in defendants' custody at all times thereafter, each of the plaintiffs was subjected to a second full strip search by

10

the defendants. In each case, the plaintiff was again required to disrobe remove or lower his or her underwear, and expose themselves for inspection.

50.     These second strip searches took place in the holding cells of the 77th Precinct and in full view of passers-by, including other arrestees, NYPD employees and other persons whose identities are unknown at this time.

51.     At no time after the plaintiffs' arrival at the 77th Precinct did the defendants have a reasonable suspicion that any of the plaintiffs were concealing weapons, contraband or evidence upon their persons or in their clothing in such a manner that would not be discovered by other, less intrusive search methods available, nor could defendants have reasonably believed that they were authorized to conduct a strip search of any of the plaintiffs.

52.     During the course of the plaintiffs' arrest, as well as the defendants' subsequent processing of the plaintiffs' arrest, various individual defendants were verbally abusive towards the plaintiffs, and subjected them to racially derogatory remarks and other discourteous statements and treatment.

53.     Several hours later the plaintiffs were transported to Central Booking in Kings County.

### *Plaintiffs Detained for Two Days While* *Defendants Obtain and Execute Search Warrant*

54.     On May 13, 2005, while the plaintiffs were still in their custody, defendants made an application for a search warrant for the Premises. Defendant Lemieux swore

11

out an affidavit and gave testimony in order to persuade the court hearing the application to issue
the warrant.

55.     The defendants kept the plaintiffs in custody while the NYPD sought,
received and executed the warrant, in an *ex post facto* attempt to obtain evidence of criminality to
justify and provide cover for the defendants' unlawful entry and search of the Premises, and
unlawful seizure and search of each of the plaintiffs.

56.     The defendants' execution of its search warrant at the Premises did not
result in the discovery of any contraband or evidence of criminality at the Premises or criminal
conduct of any of the plaintiffs, including those that resided in apartments at the Premises.

### *Plaintiffs Released after Defendants' Search*
### *Warrant Fails to Yield Evidence of Criminality*

57.     Accordingly, after the execution of the search warrant failed to provide
defendants with any legal basis to justify their prior unlawful arrest of the plaintiffs, and after
many more hours passed, during which time the plaintiffs were kept locked in holding cells with
other arrestees, each of the plaintiffs, (except for plaintiff Richard Hinds whose charges were all
dismissed in his favor later) , was released from custody.  None of the released plaintiffs were
arraigned or otherwise charged with any criminal wrongdoing; they were not permitted to meet
with counsel, or ever formally advised of the reason for his or her arrest and continued detention.
Instead, they were each let out of the holding cell where he or she was being detained with other
arrestees at Central Booking, and ordered to leave the building.

12

58.     None of the plaintiffs were provided transportation home, or to the 77th

Precinct, where the defendants were holding the plaintiffs' house keys, wallets and other personal

effects.

59.     From their arrest until their release from Central Booking, the plaintiffs

were detained and in defendants' custody for various periods of time ranging from thirty-six (36)

to forty-six (46) hours.

60.     Only plaintiff Richard Hinds was charged with a crime and those charges

were later dismissed in their entirety.

61.     In addition to the foregoing, several plaintiffs, including but not limited to,

Simmie Hicks, Jr., Marilyn Magwood and Earline Wilson, became physically ill due to and

during their arrest and detention, and required medical attention.

62.     Plaintiff Marilyn Magwood suffered a series of seizures after one or more

defendants or other members of the NYPD took Ms. Magwood's anti-seizure medication from

her and maliciously threw it away.

## FIRST CAUSE OF ACTION

63.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every

allegation of paragraphs "1" through "62" of the complaint as if incorporated and reiterated

herein.

64.     Defendants willfully and intentionally seized, searched and arrested

plaintiffs without cause, and without a reasonable basis to believe such cause existed, and

retaliated against plaintiffs for exercising their constitutional rights, and in so doing, violated,

13

conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the First,
Fourth, and Fourteenth Amendments of the United States Constitution.

65.     By reason thereof, defendants have violated 42 U.S.C. § 1983 and caused
each of the plaintiffs to be deprived of his or her federal constitutional rights, and to suffer loss of
liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SECOND CAUSE OF ACTION

66.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every
allegation of paragraphs "1" through "65" of the complaint as if incorporated and reiterated
herein

67.     Defendants City of New York, Kelly, Cunneen, and O'Connell were
responsible for ensuring that reasonable and appropriate levels of supervision were in place
within the NYPD, and in their respective commands.

68.     Upon information and belief, defendants knew that there was inadequate
supervision within the NYPD's Brooklyn North boundaries generally, and the 77th Precinct in
particular, on and prior to May 12, 2005, and that NYPD guidelines, as promulgated in the Patrol
Guide, were routinely ignored and violated by NYPD members.  Despite their prior notice of
inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels
of supervision were in place at the 77th Precinct in order to reasonably provide that NYPD
officers, employees, and their agents, engaged in police conduct in a lawful and proper manner,
including their use of their authority as law enforcement officers to stop, detain, search and arrest
members of the public, including and specifically, the plaintiffs herein.

14

69. Defendants were deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of plaintiffs' rights in particular.

70. By reason thereof, defendants have violated 42 U.S.C. § 1983 and caused each of the plaintiffs to be deprived of his or her federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## THIRD CAUSE OF ACTION

71. Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "70" of the complaint as if incorporated and reiterated herein

72. Defendant City of New York was on notice that on and prior to May 12, 2005, NYPD officers, employees, and their agents, were routinely employing strip searches, and arrests and detentions, without legal justification in violation of state and federal constitutional provisions, as well as the express language of the Patrol Guide.

73. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic and institutional misuse and abuse of strip searches, arrests and detentions, by NYPD members, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice and custom of utilizing illegal and impermissible strip searches, arrests and detentions, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond May 12, 2005.

15

74.     By reason thereof, defendants have violated 42 U.S.C. § 1983 and caused each of the plaintiffs to be deprived of his or her federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## FOURTH CAUSE OF ACTION

75.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "74" of the complaint as if incorporated and reiterated herein.

76.     Defendants' violation of plaintiffs' constitutional rights was motivated by defendants' racial animus towards plaintiffs and was knowingly undertaken with the intent to deny the plaintiffs their right to full and equal benefit of the laws on the basis of their race.

77.     By reason of the foregoing, defendants violated 42 U.S.C. § 1981 and caused each of the plaintiffs to be deprived of his or her federal constitutional rights, and to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## FIFTH CAUSE OF ACTION

78.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "77" of the complaint as if incorporated and reiterated herein.

16

79.     Plaintiffs were intentionally, willfully, maliciously and/or with reckless disregard, seized, arrested, detained, held in custody, and repeatedly strip searched by defendants against their will.

80.     At no time did defendants have probable cause, legal justification, authority, or any colorable legal basis for seizing, arresting, detaining and searching plaintiffs, and said detention, of which each plaintiff was conscious, was unlawful.

81.     Regardless of whether defendants had a lawful basis to briefly detain plaintiffs on May 12, 2005 (which defendants had absolutely no right to do), at no time prior to or during the unlawful detention did defendants have sufficient legal cause, justification or any colorable legal basis to require plaintiffs to submit to a strip search, or to continue to detain plaintiffs beyond an initial inquiry, and said detention and searches were unlawful.

82.     Defendants are liable for falsely arresting, imprisoning, and searching and strip searching plaintiffs.

83.     By reason thereof, defendants have caused each of the plaintiffs to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

### SIXTH CAUSE OF ACTION

84.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "83" of the complaint as if incorporated and reiterated herein.

17

85. Defendants intentionally, knowingly, and maliciously and/or with reckless disregard, threatened to, and did make physical contact with each of the plaintiffs against each of the plaintiffs' will and without his or her consent or permission, in the course of placing and keeping plaintiff in defendants' custody, and in carrying out the searches and strip searches of each of the plaintiffs.

86. Defendants are liable to each of the plaintiffs for assault and battery.

87. By reason thereof, defendants have caused each of the plaintiffs to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

## SEVENTH CAUSE OF ACTION

88. Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "87" of the complaint as if incorporated and reiterated herein.

89. The defendants, individually, jointly and severally, and through their agents, servants, employees, and/or associates were responsible for the proper, adequate and necessary permissible police and law enforcement conduct with respect to any interaction with the plaintiffs.

90. Defendants City of New York, Kelly, Cunneen, O'Connell and Smith were on notice that on and prior to May 12, 2005, NYPD officers, employees, and their agents, including officers assigned to the 77th Precinct, were routinely employing strip searches, arrests

18

and detentions without legal justification in violation of state and federal constitutional provisions, as well as the express language of the Patrol Guide.

91.     Defendants City of New York, Kelly, Cunneen, O'Connell and Smith, breached their duty of care to plaintiffs by failing to take any reasonable or adequate steps to stop, prevent, or limit the defendants' unlawful and malicious conduct, and this breach was the proximate cause of the deprivation of plaintiff's constitutional rights and the tortious conduct described herein.

92.     The police and law enforcement conduct engaged in and rendered to plaintiffs by the defendants, individually, jointly and through their agents, servants, employees, and/or associates was careless and negligent and not in accordance with good and accepted police and law enforcement practices and in violation of NYPD policies and procedures, and was not otherwise reasonable conduct under the circumstances then and there existing.

93.     Defendants City of New York, Kelly, Cunneen, O'Connell and Smith are liable for the negligent supervision of the other individual defendants, and any other NYPD members, employees and agents, involved in the seizures, searches, and detention of plaintiffs on May 12, 2005.

94.     As a result of the carelessness and negligence and violation of NYPD procedures and policies by the respective defendants, their agents, servants, employees and/or associates, plaintiffs were caused to sustain severe and irreparable injuries.

95.     By reason thereof, defendants have caused each of the plaintiffs to suffer loss of liberty, humiliation and embarrassment, emotional and physical suffering, and mental anguish.

19

## EIGHTH CAUSE OF ACTION

96.     Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "95" of the complaint as if incorporated and reiterated herein.

97.     By their actions described herein, defendants acted intentionally and with malice aforethought to cause plaintiffs extreme emotional disturbance.

98.     The actions of defendants described herein were outrageous and designed only to harm plaintiffs

99.     By reason thereof, plaintiffs have suffered damages including but not limited to emotional and psychological injuries.

## NINTH CAUSE OF ACTION

100.    Pursuant to Rule 10(c), plaintiffs repeat and reallege each and every allegation of paragraphs "1" through "99" of the complaint as if incorporated and reiterated herein

101.    Defendants' willfully and intentionally seized, searched and arrested plaintiffs without cause, and without a reasonable basis to believe such cause existed, and retaliated against plaintiffs for exercising their constitutional rights, and in so doing, violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under Article 1, §§11, 12 of the Constitution of the State of New York.

20

102.    Defendants' violation of plaintiffs' state constitutional rights was

knowingly undertaken with the intent to deny the plaintiffs their right to full and equal benefit of

the laws on the basis of their race.

103.    By reason thereof, defendants have caused each of the plaintiffs to be

deprived of his or her state constitutional rights, and to suffer loss of liberty, humiliation and

embarrassment, emotional and physical suffering, and mental anguish.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, the plaintiffs hereby demand a jury trial of all

issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against the defendants jointly and

severally as follows:

      i.      on the first cause of action actual and punitive damages in an amount to be
            determined at trial;

      ii.     on the second cause of action  actual and punitive damages in an amount
            to be determined at trial;

      iii.    on the third cause of action actual and punitive damages in an amount to
            be determined at trial;

      iv.     on the fourth cause of action actual and punitive damages in an amount to
            be determined at trial;

      v.      on the fifth cause of action actual and punitive damages in an amount to be
            determined at trial;

      vi.     on the sixth cause of action actual and punitive damages in an amount to
            be determined at trial;

21

vii.    on the seventh cause of action actual and punitive damages in an amount to be determined at trial;

viii.   on the eighth cause of action actual and punitive damages in an amount to be determined at trial;

ix.     on the ninth cause of action actual and punitive damages in an amount to be determined at trial;

x.      statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, as well as disbursements, and costs of this action; and

xi.     such other relief as the Court deems just and proper.

Dated:  Brooklyn, New York
        April 28, 2006

REIBMAN & WEINER

By: _____

Steven M. Weiner, Esq. (SW-4401)
Attorneys for Plaintiffs
26 Court Street, Suite 1005
Brooklyn, New York 11242
(718) 522-1743

22